IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| TERRANCE ADAMS, A/K/A JASON ALLEN, | ) | Civil Action No. 3:07-844-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DALE HUNT, JR.; | ) | |
| DEPUTY SOTO; AND | ) | |
| RUFUS KEYS, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants, | ) | |
| | ) | |

Plaintiff filed this action on March 28, 2007.[1]  His allegations concern his arrest and detention.  Plaintiff is currently an inmate at the Broad River Correctional Institution of the South Carolina Department of Corrections.  At the time of the alleged incidents, Defendants Dale Hunt, Jr. ("Hunt") and Deputy Soto ("Soto") were deputies with the Richland County Sheriff's Department.  Defendant Rufus Keys ("Keys") was a maintenance man for the Hunt Club Village Apartments in Columbia, South Carolina.  On September 19, 2007, Defendants Hunt and Soto filed a motion for summary judgment.  Because Plaintiff is proceeding pro se, he was advised on September 21, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint.  Plaintiff filed a response on October 23, 2007.[2]

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2]On August 6, 2007, Plaintiff filed a reply in opposition to defendants' motion to dismiss. No motion to dismiss had been filed by Defendants. On August 15, 2007, Plaintiff filed an amended reply in opposition to Defendants' motion for summary judgment.  No motion for summary judgment had been filed by Defendants at that time.  These responses, however, have been

(continued...)

<u>DISCUSSION</u>

Defendants Hunt and Soto provide that on April 19, 2005, Defendant Hunt received information from the Hunt Club Village apartment manager that several apartments were burglarized at the complex that day. Hunt went to the complex and spoke with Keys. Keys advised Hunt that a driver for United Parcel Service ("UPS"), Asia Ferguson ("Ferguson"), saw a suspicious person around the complex and reported the person to complex employees. Additionally, Keys advised Hunt that he and Ferguson found the suspicious person at a nearby convenience store.

Hunt asked Keys to accompany him to the convenience store to identify this individual. Soto also responded to the area to assist Hunt. Hunt and Keys located the subject, subsequently identified as Plaintiff, sitting near a payphone outside of the store. Keys identified Plaintiff as the person the UPS driver saw acting suspiciously outside of the burglarized apartments.

Hunt asked Plaintiff for identification and asked him about two large bags sitting beside him. Plaintiff refused to provide identification, denied ownership of the bags and became uncooperative. Hunt asked Plaintiff to stand up so that Plaintiff could be patted down for weapons. Plaintiff alleges that Hunt grabbed for his pocket and a struggle occurred. Hunt states he advised Plaintiff that he was under arrest, but Plaintiff continued to resist. Soto assisted Hunt in trying to restrain Plaintiff and Keys intervened to hold Plaintiff's legs.

Plaintiff was found to have a knife on his person, along with a number of items stolen from the apartments. The bags also contained stolen property from numerous burglarized apartments at the complex.

---

[2](...continued)
considered by the undersigned in preparing this report and recommendation.

2

Plaintiff was subsequently charged with several counts of burglary, resisting arrest, larceny, and possession of burglary tools. His charges were true billed by the Richland County Grand Jury. Plaintiff was convicted in a jury trial on each of the charges and was sentenced to life in prison.

Plaintiff alleges claims for abuse of authority and excessive force. He claims that Defendant Hunt accosted him while in "plain clothes" and a struggle occurred between Plaintiff and all three Defendants, resulting in injuries to Plaintiff. Plaintiff claims that he was later placed in a cell with another detainee who was not in handcuffs, while Plaintiff remained in handcuffs for twelve hours. He claims that one of the defendants boasted that he hit Plaintiff in the eye. Plaintiff requests damages of $1,500,000. Additionally, Plaintiff claims that some personal property was taken from him and was not returned. Defendants Hunt and Soto contend that they are entitled to summary judgment because: (1) Plaintiff's suit represents a collateral attack on a valid criminal conviction and is barred pursuant to <u>Heck v. Humphrey</u> and its progeny; (2) Plaintiff fails to show any unreasonable seizure in violation of the Fourth Amendment; (3) Plaintiff fails to establish any Fourteenth Amendment deprivation related to his post-arrest treatment; (4) Plaintiff's allegations that Defendant Hunt used a racial slur are baseless and fail to state a constitutional deprivation; (5) Plaintiff fails to establish a constitutional deprivation concerning his personal property claims; (6) they are entitled to Eleventh Amendment immunity; and (7) they are entitled to qualified immunity.

1.    <u>Arrest Claims/Heck v. Humphrey</u>

On May 7, 9, and 11, 2007, Plaintiff filed letters in which he appears to allege for the first time that Defendants did not have probable cause to arrest or detain him and that his arrest warrant was defective.[3] Even if these claims are properly before the court, they are barred under

_____

[3]Plaintiff may also be attempting to assert that his rights pursuant to <u>Miranda v. Arizona</u>, (continued...)

Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck v. Humphrey, the Supreme Court determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.  The court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 487.

Here, Plaintiff's allegations concern his arrest for the crimes for which he was found guilty, as discussed above.  Plaintiff has not shown that these convictions have been overturned or otherwise impugned.  Thus, to the extent that Plaintiff is claiming that there was insufficient probable cause to stop and detain him or that his arrest warrant was deficient, his claims are barred under Heck v. Humphrey, supra.[4]

---

[3](...continued)
384 U.S. 436 (1966), were violated.  There is no cause of action under § 1983 for a Miranda violation.  See Chavez v. Martinez, 538 U.S. 760 (2003).  "Miranda warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment. The remedy for a Miranda violation is the exclusion from evidence of any ensuing self-incriminating statements. The remedy is not a § 1983 action."  Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir.1995) (per curiam) (internal citations omitted).

[4]In certain circumstances, a plaintiff may prevail on an excessive force or illegal seizure
(continued...)

Even if these claims are not barred by Heck, Plaintiff fails to show that Defendants lacked probable cause to stop and detain him on April 29, 2005.

Under the Fourth Amendment an officer may make a warrantless arrest of an individual in a public place, if the arrest is supported by probable cause. United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004) (citing cases). "Probable cause" sufficient to justify an arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). The assessment of whether the officer's conduct violated a constitutional right requires the court to determine "whether an objective law officer could reasonably have believed probable cause to exist," not whether probable cause for the warrant did in fact exist. Gomez v. Atkins, 296 F.3d 253, 261-62 (4th Cir.2002)(quoting Torchinsky v. Siwinski, 942 F.2d 257, 260 (4th Cir.1991).

Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir.2002). Two factors govern the determination of probable cause in any situation: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Id. (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992)).

Under the totality of circumstances, Defendants Hunt and Soto had probable cause to believe that Plaintiff was involved in crime at the time they encountered Plaintiff. Defendant Hunt received

---

[4](...continued)
claim without implying the invalidity of the underlying conviction. See Hughes v. Lott, 350 F.3d 1157 (11th Cir. 2003); Riddick v. Lott, 202 Fed. Appx. 615 (4th Cir. 2006) (unpublished). Thus, for purposes of summary judgment only, it is assumed that Plaintiff's excessive force claims are not barred by Heck.

information from Keys that identified Plaintiff as being in the proximity to the burglarized apartments. UPS driver Ferguson described Plaintiff as having attempted to avoid contact with him when he was delivering packages. Plaintiff was found sitting between two bags of items. When Hunt attempted to pat Plaintiff down a struggle ensued.

        2.      <u>Excessive Force/Fourth Amendment Claim</u>

Plaintiff alleges that Defendants used excessive force against him in the process of arresting him. Defendants contend that the force used was not unreasonable, especially in light of Plaintiff's resisting arrest.

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)(quoting <u>United States v. Place</u>, 462 U.S. 696, 703 (1983), <u>see also</u> <u>Lester v. City of Chicago</u>, 830 F.2d 706, 711 (7th Cir. 1987). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. <u>Garner</u>, 471 U.S. at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that police officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. <u>See</u> <u>Lester</u>, 830 F.2d at 712; <u>see also</u> <u>Garner</u>, 471 U.S. at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

6

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."
Graham, 490 U.S. at 396. The court must also consider the extent of the injuries caused to the
plaintiff. See Jones v. Buchanan, 325 F.3d 520, 530-31 (4th Cir. 2003)(internal citations omitted);
see also Brown v. Gilmore, 278 F.3d at 369 (4th Cir. 2002). The reasonableness of the officers' use
of force must be determined "from the perspective of a reasonable officer on the scene, rather than
with the 20/20 vision of hindsight." Graham, 490 U.S. at 396 (recognizing that the police must often
make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

        The standard of "reasonableness" under the Fourth Amendment is wholly objective; the
question is whether the officer's actions are "objectively reasonable" in light of the facts and
circumstances confronting him, without regard to his own subjective intent or motivation. Scott v.
United States, 436 U.S. 128, 137-38 (1977); see Terry v. Ohio, 392 U.S. 1, 21-22 (in assessing the
reasonableness of a particular search or seizure "it is imperative that the facts be judged against an
objective standard"). Subjectively bad intentions on the part of the individual officer will not make
a constitutional violation out of an otherwise reasonable seizure; nor will subjectively good
intentions render an objectively unreasonable seizure constitutional. Id.; see Lester, 830 F.2d at 712.
The clearly established standard for the use of excessive force at the time of this incident was
whether a reasonable officer in the defendants' place could have had probable cause to believe that
the plaintiff posed a threat of serious harm to others. See Garner, 471 U.S. at 11.

        Defendants' actions were objectively reasonable in light of the facts and circumstances
confronting them. Plaintiff admits that a struggle ensued when Hunt attempted to pat him down.
Second, it appears that Plaintiff posed an immediate threat to the safety of officers and others as the
officers reported that Plaintiff seemed to be reaching for something in his pocket. The object was

later found to be a knife. Third, Plaintiff appeared to be actively resisting arrest. A jury later convicted Plaintiff on the charge of resisting arrest.

Additionally, Plaintiff fails to show more than de minimis injury. Richie v. Jackson, 98 F.3d 1335, 1996 WL 585152, *2 (4th Cir. 1996)[Table]; Joos v. Ratliff, 97 F.3d 1125, 1126 (8th Cir.1996) (per curiam) ("de minimis" amount of force in effecting an arrest would be insufficient to create constitutional issue). Where a plaintiff can point to no evidence of visible injury at the time of the incident and can point to no medical evidence of serious lasting injuries caused by any alleged use of force, a plaintiff's unsubstantiated claims of permanent injury are entitled to little weight. See Foster v. Metropolitan Airports Comm'r, 914 F.2d 1076, 1082 (8th Cir.1990)(claims of nerve damage and pain, without medical records establishing long-term injury, insufficient to demonstrate use of excessive force). Where a plaintiff's claims of serious injury are entitled to little weight, so are his claims of excessive force. Cooper v. City of Virginia Beach, 817 F. Supp. 1310, 1318 (E.D.Va.1993) ("lasting or serious injury" must be proven to escape summary judgment in excessive force case), aff'd, 21 F.3d 421 (4th Cir.1994) [Table]. Plaintiff was taken to Richland Memorial Hospital after the alleged incident. He has submitted a copy of the hospital discharge instructions in which he was merely diagnosed with "intraorbital contusion." No medications or treatment appears to have been necessary and Plaintiff was only instructed to return if his condition did not improve or if it worsened. See Attachment to Plaintiff's August 14, 2007 Pleading.

3.    Fourteenth Amendment Claims

Plaintiff alleges that he was placed inside a holding cell in handcuffs while another detainee was in the cell without handcuffs.  For the first time in his August 6, 2007 pleading, Plaintiff alleges that while he was being transported from the hospital, he was struck twice in the face.  In his August 14, 2007 pleading, Plaintiff claims that a Defendant (presumably Hunt) continued hitting him in the face while in the car and punched Plaintiff in the head and pushed him into a jail cell.  Defendants Hunt and Soto contend that Plaintiff fails to demonstrate a Fourteenth Amendment violation as restraining Plaintiff was entirely reasonable in the situation, Plaintiff fails to offer any corroborating evidence that he was struck by Defendant Hunt, and Plaintiff has not alleged any injury from the alleged actions.

The Due Process Clause protects a pretrial detainee from "'the use of excessive force that amounts to punishment.'" United States v. Cobb, 905 F.2d 784, 788 (4th Cir. 1990)(quoting Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)), cert. denied, 498 U.S. 1049 (1991).  In Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994 (en banc), cert. denied, 513 U.S. 1114 (1995), the Fourth Circuit held that "absent the most extraordinary circumstances" excessive force claims do not lie where the injury is de minimis.  Although Norman concerned a convicted prisoner (analyzing claims under the Eighth Amendment) rather than a pretrial detainee, its de minimis standard may also be applicable to pretrial detainees.  Riley v. Dorton; 115 F.3d 1159 (4th Cir. 1997)(holding that a purely de minimis level of injury does not constitute the kind of excessive force amounting to punishment that Bell requires), cert. denied, 520 U.S. 1030 (1997); Williams v. Dehay, 81 F.3d 153, 1996 WL 128422 (4th Cir. 1996)[Table](affirming summary judgment on a pretrial detainee's excessive force claim where the plaintiff showed no more than de minimis injury).  Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a

prisoner's injury is de minimis.  See Norman, 25 F.3d at 1262-63.  With only de minimis physical

injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction

of pain" or was otherwise "of a sort repugnant to the conscience of mankind."  Id. at 1263 n. 4.  The

Fourth Circuit explained:

> We recognize that there may be highly unusual circumstances in which a
> particular application of force will cause relatively little, or perhaps no,
> enduring injury, but nonetheless will result in the impermissible infliction of
> pain.  In these circumstances, we believe that either the force will be 'of a sort
> repugnant to the conscience of mankind,' and thus expressly outside the de
> minimis force exception, or the pain itself will be such that it can properly be
> said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to show that his Fourteenth Amendment rights were violated because any

injuries received were de minimis.  He has not alleged anything more than de minimis injury from

the alleged incident.  Medical records from Prison Health Services indicate that in a screening

examination on April 21, 2005, Plaintiff's visual acuity was noted to be 20/30 on the right and 20/20

on the left.  On July 20, 2005, Plaintiff complained of blurry vision, but his vision was noted to be

20/25 in each eye.  See Attachment to Plaintiff's October 23, 2007 Opposition Memorandum.

4.    Verbal Assault

In his complaint, Plaintiff alleges that a defendant boasted that he hit Plaintiff in the

eye.  In his August 6, 2007 filing, Plaintiff for the first time alleges that an unnamed defendant used

the word "nigger."  In his August 14, 2007 and October 23, 2007 pleadings, Plaintiff appears to

claim that Hunt told Plaintiff "I foundly [sic] captured your ass nigger."  Defendants Hunt and Soto

deny that any racial slurs or epithets were used by them during Plaintiff's arrest and argue that even

if Plaintiff's allegations are true they fail to rise to the level of a constitutional violation.

10

Although racial discrimination claims are actionable, Henry v. Van Cleve, 469 F.2d 687 (5th Cir. 1972), merely conclusory allegations of discrimination are insufficient to state a claim. See Chapman v. Reynolds, 378 F. Supp. 1137 (W.D. Va. 1974)("[A]bsent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated."). Plaintiff has not produced any evidence that his race played any part in arrest or the manner of his arrest. See Thomas v. Kincaid, No. 03-941-AM, 2004 WL 3321472 (E.D. Va. June 30, 2004)(finding that Caucasian Trooper's statement, "Come here you piece of shit," to African-American defendant was insufficient to support a claim of racial discrimination); Felton v. Chupik, No. Civ.A. 00-CV-1889, 2002 WL 32344335 (E.D.Va. Aug. 21, 2002) (finding that the comment, "I think you broke that nigger's neck," was insufficient to support a claim of racial discrimination against a police officer).

Plaintiff fails to show that the alleged comment rises to the level of a constitutional violation. Such undeniably deplorable and unprofessional behavior does not by itself rise to the level of a constitutional violation. See Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir.1987); Carter v. Morris, 164 F.3d 215, 219 n. 3 (4th Cir. 1999). Additionally, defamatory statements alone do not state a cognizable claim under 42 U.S.C. § 1983. Paul v. Davis, 424 U.S. 693 (1976). Further, verbal abuse of inmates, without more, fails to state a claim under § 1983. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did

not give rise to a § 1983 claim); <u>Lamb v. Hutto</u>, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

　　　　5.　　<u>Property Claims</u>

　　　　　　Plaintiff alleges that the police took his "brand new Air Jordan Nike shoes and cap." Complaint at 5.　Defendants contend that such an allegation fails to rise to　the level of a constitutional violation.

　　　　To the extent that Plaintiff alleges that Defendants were negligent in losing his property, his claim under § 1983 fails.　Negligence, in general, is not actionable under 42 U.S.C. § 1983.　<u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 345-48 (1986); <u>Ruefly v. Landon</u>, 825 F.2d 792, 798-94 (4th Cir. 1987); and <u>Pink v. Lester</u>, 52 F.3d 73, 78 (4th Cir. 1995).

　　　　Even in the case of an unauthorized intentional property deprivation, no due process claim arises unless or until the state fails or refuses to provide a suitable post-deprivation remedy.　<u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984).　The Fourth Circuit has held that a district court should deny relief under section 1983 if state law provides a viable remedy for personal property loss, even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of the state.　<u>Yates v. Jamison</u>, 782 F.2d 1182, 1183-84 (4th Cir.1986). It has been held that claims related to personal property are cognizable under South Carolina state law.　<u>See</u> <u>McIntyre v. Portee</u>, 784 F.2d 566, 567 (4th Cir.1986).　Thus, even if Plaintiff has alleged an unauthorized intentional property deprivation, he fails to show a constitutional violation because he has a meaningful post-deprivation remedy for loss is available.

　　　　6.　　<u>Rufus Key</u>

Plaintiff also named Keys as a defendant to this action. Keys has not filed an answer. It is recommended that Keys be dismissed sua sponte as there is no indication that Keys, a maintenance man at the apartment complex, is a state actor. A person is considered to be acting under color of state law when the person abuses the position given to him by the state. West v. Atkins, 487 U.S. 42 (1988). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326 (1941).[5] By definition, a public employee will be found to be acting under color of state law only when he is acting in his official capacity, while he is exercising his responsibilities pursuant to state law, or if he abuses the position he holds or the power it gives him, West, 487 U.S. at 50. In Shelley v. Kraemer, 334 U.S. 1, 13 (1948), the United States Supreme Court noted that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." The federal court does not have jurisdiction to hear a plaintiff's cause of action where the alleged violation was committed by a private third party, unrelated to the state.

Even if Keys is a state actor under § 1983, the only allegation Plaintiff appears to make against Keys concerns Keys, Soto, and Hunt allegedly using excessive force against Plaintiff during his arrest. As discussed above, Plaintiff fails to establish a constitutional violation as to the alleged actions.

---

[5]Classic was decided on the basis of 18 U.S.C. § 242, which provides criminal sanctions for civil rights violations. The Classic definition of acting "under color of state law" was adopted for § 1983 purposes in Monroe v. Pape, 365 U.S. 167, 183-184 (1961).

7.     <u>Immunity</u>

Defendants Hunt and Soto contend that they are entitled to Eleventh Amendment immunity.  When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest.  If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution.  Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.  In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

<u>Id.</u> at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity.  <u>Id.</u> at 70.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state.  State officials may only be sued in their individual capacities.

In <u>Gulledge v. Smart</u>, 691 F. Supp. 947 (D.S.C. 1988), <u>aff'd</u> <u>mem.</u>, 878 F.2d 379 (4th Cir. 1989)[Table], the court addressed whether South Carolina sheriffs were state or county officials. The court applied South Carolina common law principles of the master and servant relationship and

14

concluded that sheriffs are state officials.  Id. at 954-955.  The Fourth Circuit concluded, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that the Greenville County sheriff, in his capacity as a state official, was immune from suit for monetary damages under § 1983.  Id. at 1332.  Further, in Gulledge, the district court concluded that deputy sheriffs are agents of the sheriff and therefore under state, not county, control.  Gulledge, supra; see also Heath v. Aiken County, 368 S.E.2d 904 (S.C. 1988).  In Cone v. Nettles, 417 S.E.2d 523 (S.C. 1992), the South Carolina Supreme Court cited Gulledge with approval and specifically held that South Carolina sheriffs and their deputies are state officials for § 1983 purposes.  Defendants Hunt and Soto were employed by the Richland County Sheriff's Department at the time of the alleged incidents.  Thus, Defendants Hunt and Soto are entitled to Eleventh Amendment immunity from damages in their official capacities.

Defendants Hunt and Soto contend that they are entitled to qualified immunity in their individual capacities.  The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Moreover, "the manner in which this [clearly

15

established] right applies to the actions of the official must also be apparent."
As such, if there is a "legitimate question" as to whether an official's conduct
constitutes a constitutional violation, the official is entitled to qualified
immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824

(1995).  As discussed above, Plaintiff has failed to show that Defendants Hunt or Soto violated any

of his clearly established constitutional or statutory rights.  Therefore, Defendants Hunt and Soto

are entitled to qualified immunity in their individual capacities.

CONCLUSION

Based on review of the record, it is recommended that the motion of summary judgment of

Defendants Hunt and Soto (Doc. 30) be granted.  It is also recommended that Defendant Keyes be

dismissed sua sponte.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

March 20, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).